ELIZABETH WOODALL ET AL. V. JOHN RUDD, ADMINISTRATOR.

1. ALLOWANCE OF VALUE OF EXEMPT PROPERTY NOT FORMING PART OF THE ESTATE.—Doubtful whether under the probate law now in force the court can set apart to the widow the value of such property exempt from execution as may not belong to the estate or forming no part thereof.

2. HOMESTEAD—ALLOWANCE OF VALUE TO WIDOW.—Where the husband, with consent and approval of the wife, who joins in the deed, disposes of the homestead to their minor children, and soon thereafter dies insolvent: *Held*, that the widow could not appropriate other property as homestead, nor will the court set apart a homestead to her as against the creditors of the estate.

3. DEED CONSTRUED AS WILL.—Deeds executed in contemplation of death, and forming part of a testamentary disposition, will be construed as part of such will.

APPEAL from Harrison.   Tried below before the Hon. J. B. Williamson.

Elizabeth Woodall and her husband, A. R. Woodall, joined *pro forma*, filed their petition in the District Court of Harrison county on the 27th July, 1871, stating that Elizabeth, previous to her marriage with A. R. Woodall, was the surviving wife of Edward Smith, deceased, and praying to have a homestead of two hundred acres of land therein described set apart to her and her two children, who were also the children of Smith. At the October term, 1871, they filed an amendment, asking for said two hundred acres to be set apart as a homestead, and that this and their former petition be held as an answer and opposition to the claim of the administrator of the estate of Smith to have the land sold for the payment of debts.

To which John Rudd, on the 25th November, 1871, filed his deposition, alleging that he was a creditor of the estate, and showing: 1st. That by the said Smith's testamentary disposition of the original homestead in Elysian Fields to his two sons, and by his will, a testamentary disposition of the whole estate was made; that the plaintiff, Elizabeth, acquiesced in said disposition, &c. 2d. Because Elizabeth grounds her application for a new homestead on a voluntary conveyance by herself of the old homestead to her children, and that it operates as a fraud on him as a creditor; that the debts he holds were contracted long before the conveyance by Smith and wife of said original homestead, &c.

The statement of facts shows that Elizabeth was surviving wife of Edward Smith; that the two sons, Elgin and Walter, are the children of Edward, deceased, and Elizabeth; that previous to January, 1869, the lot of ground in Elysian Fields was the homestead of the family, at which time he conveyed the same voluntarily to his two sons. The deed is, from its language, a present investiture of the title in the two sons, Elgin and Walter Smith. The language used is, "give, grant, sell, convey, and deliver," which they are to hold, " all the before-described property unto Elgin and Walter Smith, their heirs and assignees, forever," subject to all the provisions in the conveyance. The subsequent provisions are, he conveys property to his wife, Elizabeth, and states that he is the natural guardian of his children, but on account of his advanced age appoints their mother, Elizabeth, trustee and agent to take care of the property for the children till the youngest becomes of age, and that the powers given to Elizabeth are not to be revoked by his death, and if it is necessary to give fuller and continuing effect to the instrument, it should be held testamentary in its character.

Edward Smith and Elizabeth, his wife, on the 6th February, 1869, executed another conveyance of the same

property to Elgin and Walter, their sons. The granting language is, " bargained, sold, and delivered, and by all these presents bargain, sell, and deliver," and expressed " to have and to hold said land unto themselves, their heirs and assignees, forever," subject only to the provisions of a deed to said lot made and delivered by Edward to Elizabeth Smith, as trustee, for the benefit of said Elgin and Walter, executed about the —— day of January, 1869. It is expressly understood that said Edward and Elizabeth relinquish their homestead right to said land and tenements, as well as all other right, title, and interest to same.

Edward Smith died 13th April, 1869, having made his last will, dated February 13, 1869. By this will he bequeaths to Elizabeth the household and kitchen furniture and the corn, fodder, oats, provisions, &c., being family supplies, also a wagon and yoke of steers, and one third interest for life in some of his real estate. To Walter and Elgin, his sons, he bequeaths all the lots in Elysian Fields, improved and unimproved, owned by him at the time of his death, and seven hundred and sixty-seven acres of land on the head-right of B. F. Hooper, known as the Dunlap place. He makes other bequests to his married children and his grandchildren, and appoints Elizabeth, his wife, executrix, and he declares he makes " this will in subordination to a deed of trust executed by me to my wife, Elizabeth," &c.; that "no provision of said deed and this will are intended to conflict with or destroy any part of the other."

At the time of the making of this will, and at the time of the making of the deed, Smith was a member of the mercantile establishment in Elysian Fields of Smith & Perry, and which firm was considerably indebted; but it was supposed the cotton they had in New Orleans would be sufficient to pay their indebtedness, but by a decline in cotton a great loss was suffered, and the firm became in-

solvent. Elizabeth proved the will and was qualified as executrix in 1870, and was removed by the District Court in 1871. The two hundred acres asked to be set aside is portion of the Dunlap place. The only property Elizabeth got from the estate of Edward Smith was the property set apart to her by the County Court, which was all the property exempt from execution except a homestead.

The court refused the application, and Mrs. Woodall and husband appealed.

The errors assigned are, (1,) that the court erred in not setting apart the said two hundred acres as a homestead; (2) the action of the court adjudging the two hundred acres subject to the debts of the estate of Smith.

*H. McKay* and *G. Lane*, for appellants.

*James Turner*, for creditors of Smith.

*R. L. Hightower*, for the administrator.

MOORE, ASSOCIATE JUSTICE.—The first question which obviously suggests itself to our consideration in the determination of this cause is, has the District Court the power and authority, under the present probate law, to grant the relief asked, although it might have been had on the facts disclosed by the record under the law in force at the date of Smith's death on an application for this purpose to the County Court. There is no direct provision in the present law making it the duty of the court to make an allowance to the widow and minor children in lieu of a homestead, where none exists, as is contained in our former probate law. It is provided, however, in the present law, that " the property reserved from forced sale by the Constitution and laws of this State, *or its value, if there be no such property*, does not form any part of the estate of a deceased person, when a constituent of the family survives."

Unquestionably, if there was a homestead, it would not be a part of the estate of the decedent in the contingency stated in the statute. Although it is enacted, in equally plain and direct terms, if there be no such property as is specifically exempt by law, then the value of it shall form no part of the estate, still there would seem to be some difficulty in ascertaining and separating the value of property which never in fact had an existence from the estate, so that it could with any propriety be said to form no part of the estate, without additional legislation to that which we now have.

The difficulty is not lessened by reference to other portions of the present probate law; thus, for instance, while the article to which we have just referred declares that property exempted from forced sale, or its value, shall form no part of the estate, by reference to art. 5593, Pas. Dig., we find that it is the duty of the court, if a part of this class of property be not found in kind among the property left by the estate, an equivalent thereof in money shall be ordered to be paid as a claim of the fourth class. And it is to be noted that this is the only specific provision directing how and when the value of any of the exempted property is to be ascertained and paid. If the value of all such property as is exempted by law from forced sale is only to be paid as claims of the fourth class, certainly in very many instances the entire property left by the decedent would have to be administered and appropriated to the payment of the preceding classes of claims.

It is obvious from an examination of the record that the application of appellants was not refused by the court on this ground. Nor has the question been discussed by the counsel who have appeared for the parties in this court. And as its determination is not essential for the proper disposal of this case, we do not propose to express our opinion upon it. Its practicable importance in the administration of our probate system, and the difficulties which environ it, as

well as the fact that our silence might be construed as a tacit sanction of the jurisdiction and authority of the District Court to make such allowances, induced us to make these suggestions in reference to it.

But if the court may set apart the value of a homestead to the widow and surviving constituents of the family, if there was none at the death of the husband, we think it quite plain that this by no means authorizes the widow to select from the estate, at her option, any particular two hundred acres of land in the county, or property in town of the greatest value allowed by law as a homestead in town, and claim that the property thus selected shall be set apart as or in lieu of a homestead. And for this reason the application of appellants might have been very properly refused. But the determination of the case upon this point does not determine appellant's right to a proper allowance in lieu of a homestead, if she is entitled to anything. We therefore deem it best to dispose of the case on its merits, rather than on any technical objection to the form and character of the application.

The claim of appellent for the allowance which she demands rests upon the supposition that, by the instrument executed by Smith on the 19th of January, 1869, to herself and their two minor children, and that of February, 6, 1869, to said children, in which she joined as grantor, for the house and lot which constituted the homestead of the family for several years previous, and upon which they continued to reside until his death, some two months afterwards, and upon which she with her family continued to reside up to the trial of this case, lost its character as the homestead of the family, and became the absolute property of said minor children. Was this the legal effect of these instruments? Evidently they form part and parcel of one transaction, and must be considered together, and also in connection of Smith's will, which was made some nine days subsequent to the day on which the first one was re-

corded and the last one executed. These papers are drawn in the form of deeds, but in many of their features they certainly partake very strongly of the nature and character of testamentary instruments. They were made a short time before the death of the ostensible grantor, when, as is stated in them, from his age and his physical condition he was unable to attend to his business. They bear upon their faces unmistakable evidence that they were made in view of the grantor Smith's anticipated speedy death, and with the intention of arranging his business and making a future provision for his wife and two minor children. In some particulars they have direct reference to and provide for transactions which were to be had subsequent to his death and during the minority of his children. And looking at these instruments in the light of all the facts of this case exhibited by the record we would, we think, be justified, if necessary to do so, in holding them to be deeds of apportionment made in contemplation of death, which can only be given the effect intended by the parties by treating them as testamentary instruments. If so, then unquestionably there was a homestead belonging to Smith at his death. And the fact that his wife may have consented to the disposition made of it by these testamentary instruments, will not authorize her to claim for herself and child, to whom the homestead has been thus conveyed, the value of a homestead out of other property belonging to the estate.

But if these instruments are to be regarded as absolute conveyances, which took effect at the date of their execution, whereby the title to the homestead became vested in the children prior to the death of their father, we think it equally clear that appellants' claim to the allowance she asks is untenable. A reasonable advancement by a parent to a child, on marriage or starting in life, has been held by our court to be valid as to existing creditors; but certainly a voluntary conveyance from an insolvent parent, even as an ad-

vancement to his child, cannot be regarded as reasonable. But settlements upon minor children cannot be regarded as advancements; nor are they to be supported by the same consideration as advancements, though made by parents when entirely solvent; that is to say, with reference to pre-existing liabilities. The record shows that Smith was probably insolvent at the date of the execution of the first of these instruments. He was unquestionably so previous to his death; and there can be no pretense that the provision he proposed thereby to make for these children can be regarded, in view of his pecuniary condition, as reasonable. He evidently did not intend to make it at the expense of his creditors, for he expressly declared it to be his desire that all his just debts should be fully paid. But whatever was the object and purpose of Smith, if the effect is to hinder, delay or defeat the claims of his creditors, as it was voluntary, it is certainly fraudulent and void as to them, whatever may be its effect as to other parties. To give these instruments the effect claimed by appellants, would, in our opinion, lead directly to this result. It is true, as has often been held, creditors have no interest in property exempt from forced sale. They therefore cannot complain that it has been sold in fraud of their rights; but that is when the creditor is seeking the proceeds arising from such sale. Here the creditors had the right to subject all of Smith's estate not exempt from forced sale to the payment of their debts. Their right to do this was superior to that of any one claiming under a voluntary conveyance. And it by no means follows, because the creditors cannot reach the homestead which has been fraudulently conveyed, or the proceeds arising from such conveyance, for the payment of their claims, that it may be voluntarily conveyed, and then other property which was subject to their demands withdrawn from such liability. The homestead exemption cannot be distorted in this way, so as to be made an engine of fraud upon the rights of

creditors. We therefore conclude, as these deeds, if they are to be so treated, were voluntary, they were in contemplation of law, in view of the pecuniary condition of the grantor, void as to creditors, and cannot be used by the parties to them to support their claim to take from the estate property which unquestionably forms a part of it, and was subject to the payment of its debts. Although the second of these instruments might upon its face appear to be merely a conveyance of the homestead, in which the creditors have no interest, yet when it is attempted to be used so that one of the grantors, and the beneficiary under it, may take from the creditors of the estate the property which they are entitled to have applied to the payment of their debts, to get another homestead in lieu of the one which has been disposed of, and of which they are in the enjoyment, it becomes in legal effect a fraudulent conveyance to defeat creditors in the collection of their just debts, and must, as to them, be held void.

There is no error in the judgment of the court, and it is therefore affirmed.

AFFIRMED.